945 So.2d 85 (2006)
Jo Ann L. Ulmer wife of/and Louis J. ULMER
v.
Dan C. FRISARD.
No. 06-CA-377.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
*86 Dan C. Frisard, I.P.P., Metairie, Louisiana, in proper person Defendant/Appellant.
Douglas W. Redfearn, M. Davis Ready, Shannon H. Huber, Simon, Peragine, Smith & Redfearn, Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellee Shelter Mutual Insurance Company.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
CLARENCE E. McMANUS, Judge.
Defendant, Dan Frisard, appeals from the grant of a motion for summary judgment in favor of plaintiffs Jo Ann Ulmer wife/of and Louis Ulmer, and third party defendant, Shelter Mutual Insurance Company, dismissing his claims against them. For the reasons that follow, we affirm the decision of the trial court.
This suit began with the filing of a petition for damages by the Ulmers against Dan Frisard, alleging defamation, libel, slander, malicious prosecution, harassment, and intentional infliction of emotional distress. Frisard filed a reconventional demand against the Ulmers. In addition, he named Shelter Mutual Insurance Company ("Shelter"), the Ulmers' home owners insurers, as a third party defendant.
The facts of this case are gleaned from the pleadings in the designated record before us. The proceedings forming the basis of this suit had their inception twenty years ago, when the parties entered into a real estate transaction for Frisard to purchase a home belonging Jo Ann Ulmer. Because of a misrepresentation of lot size in the sale, Frisard obtained a judgment in 1986 entitling him to the return of his deposit together with a like amount as a penalty. Frisard sought to execute on the judgment against the Ulmers by instituting foreclosure proceedings on real property they owned in St. Tammany Parish, namely 16 Denni Court, Covington, Louisiana.
About that same time, the Ulmers filed a Chapter 13 bankruptcy proceeding, which was voluntarily dismissed by claimant about nine moths later on December 14, 1989.
Subsequently, in 1990, Frisard executed on the judgment by causing the seizure of Jo Ann Ulmer's½ interest in the St. Tammany Parish property.
The Ulmers apparently filed four bankruptcy proceedings, at least three of which appear to have been pending at the same time. It appears that the Ulmers obtained a discharge of Frisard's debt in bankruptcy court, and a discharge in bankruptcy on March 12, 1992.
In May of 1998, the Twenty-Second Judicial Court rendered judgment decreeing that the 1990 Sheriff's sale was a nullity. Frisard again initiated executory proceedings in September of 1998.
The basis of this instant suit was a petition filed by the Ulmers against Dr. Frisard on November 16, 1995. On March 22, 1996, Frisard filed a reconventional demand. He amended his demand on November 18, 1999, June 1, 2000, and April 25, 2001. In the June 1, 2000 amendment, he named Shelter as a third party defendant. In his reconventional demand, Frisard seeks to recover for negligence, defamation, *87 malicious prosecution, abuse of rights, negligent infliction of emotional distress, intentional infliction of emotional distress and/or unjust enrichment.
Shelter filed a motion for summary judgment, which was adopted by the Ulmers. After consideration, the motion for summary judgment was granted by the trial court, and Frisard's action against the Ulmers and Shelter was dismissed. In the reasons for judgment, the court said that "Frisard's actions will fail due to an absence of factual support for one or more elements essential" to his cause of action.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action. . . ." LSA-C.C.P. art. 966(A)(2). Louisiana Code of Civil Procedure art. 966(C)(2) provides:
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, motion, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Decisions as to the propriety of granting the motion must be made with reference to the substantive law applicable to the case. Mohsan v. Roule-Graham, 05-122 (La. App. 5 Cir. 6/28/05), 907 So.2d 804.
The court's review of a grant or denial of a motion for summary judgment is de novo. Ocean Energy v. Plaquemines Parish Gvmt., 04-0066 (La.7/6/04), 880 So.2d 1. Thus, we ask the same questions as the district court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id.
In his petition Frisard contended that the Ulmers, through their negligence and intentional acts, caused him damages financially, physically and emotionally. The trial court found that Frisard did not present factual support for one or more elements of his causes of action. The trial judge, in his reasons for judgment, stated that
Plaintiffs in Reconvention [Frisard] fail to provide factual support that the Ulmers were negligent in that they had a duty to conform their conduct to a specific standard, that they failed to conform their conduct to that standard, that their failure to conform to that standard of conduct was a legal cause of their damages, assuming damages occurred.
Plaintiffs in Reconvention fail to provide factual support that the Ulmers commenced or continued an original criminal or civil proceeding against the Frisards, that any such proceeding terminated in favor of the Frisards, that said proceeding lacked probable cause, that the Ulmers acted with malice therein, and that damage conforming to legal standards resulted to the Frisards . . .

*88 Plaintiffs in Reconvention fail to provide factual support that the predominate motive of the Ulmers in exercising a right was to cause harm to the Frisards, that in exercising that right, the Ulmers had no serious or legitimate motive, that the exercise of the right by the Ulmers violated moral rules, good faith, or elementary fairness, or that the exercise of the right by the Ulmers is or was for a purpose other that for which it was granted.
Plaintiffs in Reconvention fail to provide factual support that the conduct of the Ulmers was extreme and outrageous, that the Frisards suffered severe emotional distress as a result of said conduct, and that the Ulmers desired to inflict severe emotional distress or knew that severe emotional distress would be certain substantially certain to result from their conduct. Factual support regarding the Ulmers intent in the protracted litigation has not been provided.
In his pro se brief to this Court, Frisard alleges that "The trial court in manifest reversible error granted summary judgment dismissing reconventional demand without acknowledging the most egregious causes of action and despite an abundance of factual support of evidence, law and jurisprudence supporting said causes of action and resultant damages."
In his first allegation of error, Frisard contends that the trial court committed manifest error in failing to "either read a previously filed reconventional demand or failed to carefully read appellant's third amending reconventional demand", and that "it failed to acknowledge the most egregious causes of action with the greatest alleged damages." It appears that Frisard is arguing that the Ulmers, by the filing of their bankruptcy proceedings, violated bankruptcy statutes to his detriment, these filings, as well as the Ulmers actions in contesting the seizure of their real property in St. Tammany Parish (16 Denni Court), operated to unlawfully deprive him of his right to proceed against the Ulmers' real property, and caused him financial, physical and emotional harm, and that the trial court failed to consider the evidence he presented for these causes of action.
In his second allegation of error Frisard alleges that "The trial court in reversible error overlooked an abundance of factual support evidencing that the Ulmers continuously and intentionally violated bankruptcy statutes in harassing appellant with abusive malicious litigation for 10 years, first in bankruptcy court and then without cause in Twenty-Second Judicial District Court culminating in the Ulmers' intentional and wrongful incarceration of appellant."
In support of these allegations, Frisard cites to "Reasons for Judgment" that were issued by the Twenty-Second Judicial District Court on July 31, 2000, in one suit instituted by the Ulmers. That case was dismissed after the Ulmers settled with Frisard's insurer and therefore no judgment was rendered in that case. That case cannot serve as the basis for a malicious prosecution or other claim.
With regard to Frisard's allegations of wrongful incarceration, he recites two instances where he alleges that he was wrongfully incarcerated. Concerning the first incident, resulting from his entry onto 16 Denni Court on November 18, 1998, Frisard stipulated that he was not appealing any causes of action arising out of that incident, at a hearing on the issue of the designation of this record.
Regarding his second incarceration, Frisard alleges in his petition that he was incarcerated in the St. Tammany jail from April 24th through April 28th, for failure to comply with discovery. However, he fails to present evidence to show that this incarceration was illegal or malicious.
*89 The court reviewed the evidence presented to support Frisard's allegations, especially the affidavit filed by Frisard, and the various court proceedings in the record, and found an absence of support for one or more elements of his claims against the Ulmers. We have conducted a de novo review of the record before us, and find that the trial court did not err in its determination.
In his third allegation of error, Frisard argues that the trial court erred in failing to strike the exhibits attached to the motion for summary judgment filed by Shelter (and adopted by the Ulmers) arguing that the exhibits were unsworn and unverified. The exhibits at issue are rulings from previous litigations. Frisard does not dispute that these rulings were made, nor does he call their authenticity into question. The trial court did not err in failing to strike these exhibits. Compare Reed v. American Equity Ins. Co., 05-1298 (La.App. 3 Cir. 4/5/06), 927 So.2d 1210. (Uncertified insurance policies that are filed with a motion for summary judgment may be considered if nothing in the record calls their authenticity into question.)
From the record before we find no error in the trial court's finding that the plaintiff in reconvention failed to present sufficient evidence to show that he would meet his evidentiary burden at trial. We therefore affirm the decision of the trial court granting summary judgment in favor of Shelter Mutual Insurance Company and Jo Ann Ulmer wife of/and Louis Ulmer, dismissing Frisard's claims against them. All costs are assessed against appellant, Dan Frisard.
AFFIRMED.